IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA RICHARDSON, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) 14-cv-1711 |
| v. | ) |
| | ) Hon. John Z. Lee |
| METROPOLITAN FAMILY SERVICES; | ) |
| CHARLENE WASHINGTON; LEAH | ) |
| SULLIVAN; and KATHRYN SUMMERS- | ) |
| KELLEY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Cynthia Richardson brings claims of employment discrimination under Title VII of the Civil Rights Act of 1964 against Defendants Metropolitan Family Services, Charlene Washington, Leah Sullivan, and Kathryn Summers-Kelley.[1] Defendant Metropolitan Family Services moves to dismiss, arguing Plaintiff's suit is untimely, Plaintiff failed to exhaust administrative remedies, and Plaintiff fails to state viable claims for retaliation and defamation. Plaintiff has filed a response to Defendant's motion. In her response, Plaintiff cites no legal authorities. Instead, she reasserts and highlights many factual allegations contained in her Amended Complaint and attaches extensive additional documentation. For the reasons provided herein, the Court grants in part and denies in part Defendant's motion.

---

[1] The Court previously dismissed Defendants Charlene Washington, Leah Sullivan, and Kathryn Summers-Kelley for misjoinder of parties under Federal Rule of Civil Procedure 21. *See* July 31, 2014 Ord. Plaintiff had alleged various claims against these individuals for actions at her church which did not arise out of the same transaction or occurrence and lacked a connection to the discrimination alleged against Metropolitan Family Services. These allegations therefore were subject to dismissal. *See* Fed. R. Civ. P. 20(a)(2)(A)-(B). The only defendant remaining is Metropolitan Family Services.

1

## I. Factual Background[2]

Plaintiff Cynthia Richards brings the action *pro se* for employment discrimination. Am Compl. ¶ 1. Plaintiff alleges discrimination beginning on or about May 30, 2013. *Id.* ¶ 6. She filed her principal charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on March 1, 2013, and the Illinois Department of Human Rights ("IDHR") on or about June 18, 2013. *Id.* ¶ 7.1 (i)–(ii). The EEOC issued a notice of the right to sue on March 4, 2014. *Id.* ¶ 8. Plaintiff alleges discrimination based on age, race, religion, and sex. *Id.* ¶ 9. In particular, Plaintiff alleges Defendant terminated her employment, failed to promote her, failed to reasonably accommodate her religion, failed to stop harassment, and retaliated against her.

Plaintiff's discrimination charges germinated from disputes at the workplace. In 2009, Plaintiff made a verbal complaint against Program Supervisor Ellen Singletary for harassment and abuse in front of other coworkers. *See* Am. Compl. ¶ 13(a). This harassment, in part, stemmed from Singleton's critical view of Plaintiff's attendance of a Bible college. *See id.* Later that year, on November 6, 2009, the new Program Manager Carrie Pullie and the new Program Supervisor Tonia Garnett-Butler made allegedly false accusations against Plaintiff in a Corrective Action Plan, citing Plaintiff for deficiencies in her treatment of clients and for forcing her religious views upon clients. *Id.* ¶ 13(b). Plaintiff responded to the Corrective Action Plan with a detailed refutation, correcting misperceptions concerning her treatment of several clients. *See id.* Notwithstanding Plaintiff's refutation, on January 1, 2010, Pullie and Garnett-Butler appended the Corrective Action Plan to Plaintiff's Performance Appraisal. *See id.* ¶ 13(c). Plaintiff refused to sign the appraisal, believing the Corrective Application Plan to be false and

---

[2] When reviewing the Defendant's motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in Plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

the Performance Appraisal more generally to be in conflict with several "exceeds expectations" ratings she previously received. *See id.* Between early 2010 and 2012 several other incidents occurred at work, including a conflict with Garnett-Butler over an internal file audit and workflow, and a debate with Garnett-Butler's replacement, Stefan Bell, over referrals for clients who requested housing splits. *See id.* ¶ 13(d)–(f).

Pullie included the latter incident with Bell in Plaintiff's January 1, 2012, Performance Appraisal. *See id.* ¶ 13(g). Pullie admonished Plaintiff to improve by notifying her immediate supervisor about problems with clients who reached self-sufficiency. *See id.* Plaintiff alleges Pullie added this criticism to Plaintiff's Performance Appraisal solely to discredit her. *See id.* Bell allegedly confirmed Pullie's improper motive. *See id.* Soon after, more trouble ensued: Pullie became angry with Plaintiff for responding to an internal job posting for a Case Manager II position. *See id.* ¶ 13(h). Pullie instructed Bell to coach Plaintiff regarding the policies and procedures for responding to internal job postings. *See id.* Plaintiff then interviewed for the Case Manager II position but allegedly encountered unprofessional behavior during her interview, including Garnett-Butler whispering to the Hiring Manager during the interview. *See id.* ¶ 13(i).

Senior Human Resources Director Terrence Cohoon later represented to Plaintiff that Defendant's filling of the Case Manager II position by increasing the workload of an existing Case Manager I employee was purely a business decision. *See id.* ¶ 13(i). Plaintiff believes that Pullie's promotion of an inexperienced coworker without the initial proper license who was 10 years younger and of a different race than Plaintiff to another Case Manager II position was retaliation for Plaintiff's initial complaints against Singletary. *See id.* ¶ 13(k). In July 2012, Pullie sent more harassing emails concerning Plaintiff's referral of clients to a transitional job

3

program and Plaintiff's scanning of scholarship documentation for a job interview with the Chicago Housing Authority. *See id.* ¶¶ 13(l)–(m).

On August 14, 2012, Pullie gave Plaintiff a Written Warning for Performance that allegedly falsely accused Plaintiff of calling a coworker an atheist and admonishing this coworker that they were going to hell. *Id.* ¶ 13(n). Plaintiff believes she was the only person in the office that could not discuss her religious beliefs, as other coworkers, who were Muslims, Christians, and Buddhists, appeared free to do so. *Id.* Bell confidentially admitted to Plaintiff that Pullie assigned two other coworkers to spy on her. *Id.* Pullie assigned Bell to complete coaching logs with Plaintiff related to the Written Warning for Performance. *See id.* ¶13(o). During this time Bell allegedly made sexually inappropriate advances and remarks to Plaintiff. *See id.* Finally, on August 28, 2012, Plaintiff filed a grievance against Pullie and others for false allegations in the Written Warning for Performance. *See id.* ¶ 13(p). On September 7, 2012, Cohoon responded to the grievance, stating that Defendant had investigated the accusations and initially found that there had been "just cause" for Pullie to issue the Written Warning for Performance. *Id.* ¶ 13(q). Soon thereafter, Cohoon indicated Defendant had completed its internal investigation and had concluded that inappropriate comments had been made regarding religion and religious practices justifying the Written Warning for Performance. *See id.* ¶ 13(r).[3]

Problems at work continued. On October 4, 2012, Pullie sent Plaintiff a harassing email concerning client home visits and client engagement. *See id.* ¶ 13(s). That same month, Plaintiff interviewed twice for a position at Defendant's Jane Addams Domestic Violence Court Advocacy Program but was denied employment. *See id.* ¶ 13(t). Plaintiff also was denied a

---

[3] Hereafter in Plaintiff's Amended Complaint there follows a lengthy set of factual allegations concerning incidents with the members of her Church. *See id.* ¶ 13(r) (comprising pages 13–16). Having dismissed all the individual Church members, see 7/31/14 Ord., the Court does not recount these allegations here.

school loan to pay for World Bible College online classes; allegedly, the denial was due to her Written Warning for Performance. *See id.* ¶ 13(u). But on January 30, 2013, in a Performance Appraisal given by Bell, Plaintiff received an "Exceeds Expectations" rating. *See id.* ¶ 13(v).

Notwithstanding this positive appraisal, Plaintiff filed the March 1, 2013, employment discrimination charge with the EEOC. *See id.* ¶ 13(w). On May 30, 2013, Defendant terminated Plaintiff. *See id.* ¶ 13(y). On May 31, 2013, Pullie terminated Plaintiff's medical benefits. *See id.* ¶13(z). Somewhat confusingly, based on Plaintiff's allegations, Defendant sent a letter dated June 4, 2013, to Plaintiff stating that she must call in to the supervisor daily and warning that three days of missed calls would constitute job abandonment. *See id.* ¶ 13(aa). On June 14, 2013, Plaintiff went to the office to complete a travel expense report, turn in May 2013 paperwork, and return petty cash. *See id.* ¶ 13(bb). Four days later, on June 18, 2013, Plaintiff reported to work without secure transportation, and Pullie informed Plaintiff that her employment was terminated and she must leave the premises. *See id.* ¶ 13(cc). On June 18, 2013, Plaintiff filed her charges with the IDHR. *See id.* ¶ 13(dd).

Since her termination, Plaintiff has been treated for stress-related conditions, including high blood pressure, depression, dysphonia, chronic muscle tightness, and fibromyalgia. *See id.* ¶ 13(ii). An emergency visit to the Cook County Hospital on March 2, 2014, resulted in prescription of high-blood pressure medication. *See id.* ¶ 13(kk). Plaintiff has been living in a homeless shelter since February 2014, and obtained only temporary employment from March 27, 2014, to June 9, 2014. *See id.* ¶¶ 13(jj), 13(ll).

## II. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must at least "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing the United States' motion to dismiss, the Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. Mere legal conclusions, however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

### III. Analysis

#### A. Dismissal for Untimeliness Is Not Appropriate

Defendant first argues that Plaintiff's claims are untimely because her administrative charge was not filed within 300 days of the alleged discriminatory conduct and she failed to file her complaint within ninety days of receipt of the March 1, 2013, EEOC Notice of Right to Sue. "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). "But dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Id.* at 674–75.

Here, Plaintiff does not plead herself out of court. Plaintiff's Amended Complaint does not affirmatively defeat by its own allegations the potential application of the equitable estoppel or tolling doctrines. Evidence gathered in discovery may show these doctrines to be applicable. Moreover, while many of the events Defendants identify did occur well before the 300-day limitations period, "it is well settled that evidence of earlier discriminatory conduct by an employer that is time-barred is nevertheless entirely appropriate evidence to help prove a timely claim based on subsequent discriminatory conduct by the employer." *Mathewson v. Nat'l*

*Automatic Tool Co.,* 807 F.2d 87, 91 (7th Cir. 1986). Thus, the Court can consider events that fall outside of the 300-day limitations period as evidence supporting Plaintiff's March 1, 2013, EEOC charges of religious discrimination and retaliation.

Many of the cases Defendant cites involve untimeliness claims in the context of summary judgment and illustrate this point. *See Snider v. Belvidere Twp.*, 216 F.3d 616, 618 (7th Cir. 2000); *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998). Another case Defendant cites expressly note that determination of untimeliness is better left for summary judgment. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 641 (7th Cir. 2004) (noting on a motion to dismiss that notice for timing purposes "certainly cannot be decided at this early stage of the litigation"). The other case cited by Defendant, *Hentosh v. Herman M. Finch University of Health Services,* affirmed dismissal based on the 300-day filing deadline, but only after the Plaintiff argued unpersuasively that equitable tolling and equitable estoppel applied. 167 F.3d 1170, 1174–75 (7th Cir. 1998). Here, Plaintiff has made no such argument. At the pleading stage her silence does not countenance dismissal. And although Defendant correctly points out that a statute of limitations may not be tolled between the time of Plaintiff's earlier voluntary dismissal and subsequent refiling, see *Beck v. Caterpillar, Inc.*, 855 F. Supp. 260, 264 (C.D. Ill. 1994), Plaintiff has not otherwise pleaded herself out of court at the motion-to-dismiss stage by negating through her pleadings or responses the applicability of equitable doctrines that would toll the ninety-day statute of limitations period. In short, dismissal for untimeliness is inappropriate.

> **B.      Plaintiff Failed to Exhaust Administrative Remedies for Age, Sex, and Race Discrimination Charges**

Defendant also moves to dismiss for failure to exhaust administrative remedies with respect to Plaintiff's claims of discrimination based on age, race, and sex. A prospective plaintiff

must file a charge of discrimination with the EEOC prior to bringing suit in federal court. 42 U.S.C. § 2000e-5(f)(1). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This rule is not jurisdictional but rather a condition precedent to bringing a case based on those claims. *Id.* "Nevertheless, because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Id.* There is particular "leeway" given for Title VII plaintiffs; "all Title VII claims set forth in a complaint are cognizable that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.1976) (en banc). "[T]he test of *Jenkins* is satisfied if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.*

The allegations in Plaintiff's administrative charges, however, bear no relationship to her claims of age, sex, and race discrimination. Plaintiff's four administrative charges complain of retaliation for engaging in a protected activity and discrimination on the basis of religion. *See* Pl.'s Resp. Exs. 1 (March 1, 2013, EEOC charge); 2 (March 7, 2013 EEOC charge); 7 (March 7, 2013, IDHR charge); 15 (June 18, 2013, IDHR charge). Plaintiffs March 1, 2013, and March 7, 2013, EEOC charges allege discrimination because of religion and a bare mention of retaliation, apparently for complaining to Defendant of the religious discrimination. *Id.* Exs. 1; 7. Plaintiff's March 7, 2013, IDHR charge alleges religious discrimination and retaliation for engaging in protected activity, specifically, the filing of internal HR complaints with Defendant.

8

*Id.* Ex. 7. Plaintiff's June 18, 2013, IDHR charge complains only of retaliation for filing the March 7, 2013, IDHR charge. *Id.* Ex. 15. Plaintiff's charges contain no further allegations, theories, or other pertinent bases for charges of discrimination. "When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek*, 31 F.3d at 503. Therefore, Plaintiff's additional claims of discrimination based on sex, race, and age can only be maintained if the facts alleged in the charge would lead the EEOC to investigate these bases as well. While "[t]he second part of the test is difficult to apply because it requires speculation as to what the EEOC might or might not discover in the course of an investigation," see *id.* at 500, the Court concludes that Plaintiff's bare factual allegations would not lead to investigation of her additional claims for discrimination based on age, sex, and race

Factually, Plaintiff complains only of generalized grievances — "adverse treatment," "discipline," "scrutiny," and "denial of benefits." *See* Pl.'s Resp. Ex. 1. Plaintiff mentions the filing of internal complaints without additional explanation. *See id.* Ex. 7. These general facts, coupled with the persistent allegation that they occurred because of Plaintiff's religious beliefs, would likely lead the EEOC to investigate workplace misconduct related to Plaintiff's expressions of religious beliefs. While generalized terms like "adverse treatment" could also encompass discriminatory acts taken on the basis of sex, age, or race, Plaintiff provided no facts in her charges with the IDHR and EEOC that would alert the EEOC to these additional bases. And while "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations," this clarity usually comes by the way of additional affidavits submitted to the EEOC or addendums to the administrative

9

charge later identified by Plaintiff or the court. *See Cheek*, 31 F.3d at 502. Plaintiff has provided no additional materials she filed with the EEOC containing further facts for investigation.

Lacking even the tatters of a factual roadmap for race, sex, and age discrimination claims, the EEOC likely would not investigate focused on these theories. While the "reasonable relationship" test is a liberal standard, see *Shamim v. Siemens Industry, Inc.*, 854 F. Supp. 2d 496, 504 (N.D. Ill. 2012), the administrative charges of religious discrimination Plaintiff filed with the EEOC explicitly point to her practice of Christianity. *See* Pl.'s Resp. Exs. 1–2. While not requiring "lawyer-like proficiency" to also raise an inference of age, sex, or race discrimination, Plaintiff's "complaint must describe the same conduct and implicate the same individuals as allegations in the EEOC charge." *Geist v. Glenkirk*, No. 01 C 0700, 2001 WL 1268574, at *5 (N.D. Ill. Oct. 23, 2001). Here Plaintiff's complaint goes further afield. The age and race discrimination claims involve promotion of a younger Hispanic employee and are unrelated to the religious incident described in Plaintiff's Amended Complaint and identified in her EEOC charges. *See* Pl.'s Resp. 18–19 (clarifying age and race discrimination claims). Likewise, the sex discrimination claim involves allegations of improper treatment by a separate individual, Stefan Bell, and describes conduct apart from the religious incident described in Plaintiff's Amended Complaint and identified in her EEOC charges. *See id.* 24 (clarifying sex discrimination claims).

And although Plaintiff's bare mention of "retaliation for engaging in protected activity" in her EEOC charges could possibly be related to more than her submission of internal complaints (also referenced in the EEOC forms), "retaliation, discrimination, and harassment claims are normally 'not 'like or reasonably' related to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another.'" *Shamim*, 854 F. Supp. 2d at

504 (quoting *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003)). An investigation of age, sex, or race discrimination cannot be "reasonably expected to grow out of" bare mention of "retaliation for engaging in protected activity," elsewhere delineated as the filing of internal HR complaints. Consequently, Plaintiff's claims for discrimination based on age, sex, and race are dismissed.

### C. Plaintiff Adequately Pleads Her Retaliation Claim

Defendant argues that the remaining claim for retaliation should be dismissed because of Plaintiff's failure to state a *prima facie* case of retaliation. In particular, Defendant argues that Plaintiff failed to plead that she was meeting her employer's legitimate expectations. A *prima facie* case of retaliation requires the employee to show that "(1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Atanus v. Perry*, 520 F.3d 662, 677 (7th Cir. 2008). The allegations of meeting legitimate expectations must be from the time the employee was terminated. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 310 (7th Cir. 2012). But "[a] Title VII plaintiff need not set forth allegations of a prima facie case in the complaint." *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 (2002)).

Plaintiff marshals no legal arguments in response to Defendant's argument for dismissal of the retaliation claim under Rule 12(b)(6). Instead, Plaintiff reasserts many of the allegations concerning retaliation contained in her Amended Complaint. But here Plaintiff alleges that she engaged in protected activity, namely her internal human resources complaints and her filing of a

11

charge with the IDHR. *See* Am. Compl. ¶ 13(w). Plaintiff further alleges Defendant treated her adversely for these actions, namely, Defendant terminated her. *See* Am. Compl. ¶ 13(y). Though Plaintiff does admit she was without a car at work, the Amended Complaint otherwise indicates that she met her employer's expectations. Plaintiff alleges that she received an "Exceeds Expectations" rating on a January 30, 2013, performance review. *See* Am. Compl. ¶ 13(v). Plaintiff also alleges that on January 1, 2012, she received a review noting she normally communicated with her immediate supervisor about possible situations with clients. *See* Am. Compl. ¶ 13(g). And Plaintiff notes that, even without a car, she was allowed to continue working in the office. *See.* Pl.'s Resp. 7. Although Plaintiff does not allege that similarly situated employees that did not engage in protected activity were not terminated, Plaintiff does allege many of the key elements of a retaliation claim and in any case is not required to plead every single element of a *prima facie* case. Dismissal of her retaliation claim at this stage is inappropriate.

### D. Defamation Claims

Defendant also moves to dismiss Plaintiff's pendent state law claim for defamation based on the statute of limitations for such a claim under Illinois law and for failure to state a claim specific enough to sustain defamation allegations. Plaintiff responds by reasserting and highlighting many of the facts alleged as the basis for her defamation claims. She makes no legal arguments.

As an initial matter, the Defendant's argument that the one-year statute of limitations for defamation bars Plaintiff's claims fails. *See* 735 Il. Comp. Stat. 5/13-201 (one-year statute of limitations for defamation claims). Like Defendant's prior arguments concerning timeliness, at this stage, dismissal on the basis of the statute of limitations is inappropriate. Statute of

limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). Again, "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc.*, 559 F.3d at 674; *see also Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003) ("[A] plaintiff is not required to negate an affirmative defense, such as the statute of limitations, in his complaint.") (examining equitable tolling). The Court will not dismiss Plaintiff's Amended Complaint on statute of limitations grounds based upon the record before it.

The Court turns next to Defendants' argument that Plaintiff more generally fails to state a defamation claim. "A defamatory statement is one that 'tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him.'" *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003) (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 206 (Ill. 1992)) "An Illinois defamation action may state a claim either for defamation *per se* (statements so harmful to reputation that damages are presumed) or defamation *per quod* (statements requiring extrinsic facts to show their defamatory meaning)." *Id.* Defamation *per quod* requires itemized losses and pleading "specific damages of actual financial injury," and Plaintiff has pleaded neither. *See id.* at 927. Consequently, the Court presumes Plaintiff proceeds on a theory of defamation *per se*.

To state a claim for defamation *per se*, the defamatory statement must "fit into one of the limited categories of statements or imputations that Illinois considers actionable per se: (1) commission of a criminal offense; (2) infection with a venereal disease; (3) inability to perform or want of integrity in the discharge of duties of public office; (4) fornication or adultery; or (5) words that prejudice a party in her trade, profession, or business." *Id.* (citing *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996)). "Even if a statement falls into a

recognized category, it will not be actionable per se if the statement 'may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff.'" *Id.* (7th Cir. 2003) (quoting *Chapski v. Copley Press,* 442 N.E.2d 195, 199 (Ill. 1982)).

Defendant argues Plaintiff asserts only speculative and conclusory allegations[4] that do not specifically identify false statements Defendant communicated to a third party. Defendant reiterates there are no factual allegations that Metropolitan Family Service made false statements to a third party any time after 2012. Plaintiff's Amended Complaint alleges that Defendant falsely accused her of calling a coworker an atheist in a written workplace warning, and more generally, that Defendant collaborated with members of Plaintiff's church to slander, stalk, harass, and ostracize Plaintiff, and destroy Plaintiff's employment, reputation, relationships, and ministry. *See* Am. Compl. ¶ 12(h).

While these allegations do not appear to fit into categories (1) – (4) above, at least some of the allegations could fall into category (5): "words that prejudice a party in her trade, profession, or business." *Muzikowski*, 322 F.3d at 924 (citing *Bryson*, 672 N.E.2d at 1214). "In Illinois, to succeed under the relevant categories of defamation *per se*, a plaintiff must have been accused of lacking ability in [their] trade or doing something bad in the course of carrying out [their] job." *Madison v. Frazier*, 539 F.3d 646, 655 (7th Cir. 2008) (citing *Clarage v. Kuzma*, 795 N.E.2d 348, 356 (Ill. App. Ct. 2003)). "[S]tatements deemed to be defamatory *per se* in Illinois under these categories have been related to job performance, as opposed to attacks related to personal integrity and character." *Id.* Here, Plaintiff's allegation that the Written

---

[4] Illinois has a heightened pleading rule for defamation claims, but because federal procedural rules apply in federal court, Plaintiff need only meet the requirements of Rule 8 here. *See Knafel v. Chic. Sun-Times*, Inc., 413 F.3d 637, 641 (7th Cir. 2005) ("[A]n Illinois pleading rule does not apply in a federal court, and in federal court [plaintiff] was entitled to the usual rules for notice pleading in Federal Rule of Civil Procedure 8.")

Performance Warning falsely accused her of telling a coworker that they were an atheist and going to hell is related to job performance, namely, Plaintiff's ability to interact with other team members with diverse viewpoints and backgrounds in an office setting.

Plaintiff must also plead "that there was an unprivileged publication of the defamatory statement to a third party by the defendant." *Madison*, 539 F.3d at 653. Defendants argue that Plaintiff has not identified a third party and has not sufficiently identified the allegedly defamatory statements in her pleadings, citing *Massachusetts Bay Insurance Co. v. Koenig Leasing, Inc.*, 136 F.3d 1116, 1128 (7th Cir. 1998) and *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992).[5] In her Amended Complaint, Plaintiff alleges that "Defendants falsely accused plaintiff of calling a co-worker an atheist in a Written Warning for Performance." *See* Am. Compl. ¶12(h). Plaintiff has identified a statement made by Defendant.

The question then becomes whether this statement was published.

"To prove publication, the plaintiff must show that the defamatory statements were communicated to some person other than plaintiff." *McGreal v. AT & T Corp.*, 892 F. Supp. 2d 996, 1016 (N.D. Ill. 2012). Illinois courts have held that intra-office communications can meet the "publication" requirement; "[t]he element of publication is satisfied, even within a corporate environment, where the communication is made to any third party." *Popko v. Cont'l Cas. Co.*, 823 N.E.2d 184, 191 (Ill. App. Ct. 2005). Here, Plaintiff's claim regarding the allegedly false written warning presented by Carrie Pullie was allegedly communicated to at least one other employee, Stefan Bell. *See* Am. Compl. ¶¶ 13(n)–(o). Lastly, while a defamatory statement still

---

[5] Neither *Massachusetts Bay Insurance Co.* nor *Lucien* are particularly helpful to Defendant here. *Massachusetts Bay* was decided under Tennessee law and furthermore involved a statement alleged in an extrinsic document that did not form part of the inquiry on a motion to dismiss. *See Massachusetts Bay Ins. Co¸* 136 F.3d at 1128. Defendant cites *Lucien* for the proposition that Plaintiff must do more than simply allege that Defendant "lied," "without even stating what those lies are[.]" *See Lucien*, 967 F.2d at 1168. But Plaintiff has met this standard concerning the Written Warning for Performance, as she identifies the particular allegedly false statement.

may not be actionable in Illinois because of a qualified privilege, see *Popko*, 823 N.E.2d at 190, under Illinois law, existence of qualified privilege in a defamation action is an affirmative defense. *See Babb v. Minder*, 806 F.2d 749, 753 (7th Cir. 1986) (citing *Fascian v. Bratz*, 421 N.E.2d 409, 412 (3d Dist.1981)). Plaintiff need not plead around affirmative defenses. *See Cancer Found., Inc.*, 559 F.3d at 674. Consequently, determination of the privilege at this stage, especially where Defendant has not asserted the privilege, is inappropriate.

By contrast, Plaintiff's allegation that Defendant defamed her character "when collaborat[ing] with members of Crusaders Church by maliciously slandering, talking, harassing, ostracizing and destroying plaintiff's employment, name, marriage, relationships, and ministry," see *id.*, fails to meet the pleading requirements for defamation described above. Nowhere is a particular statement by Defendant identified. Moreover, without the identification of a particular statement, it is unclear that "collaborating" involved publication. *See* Am. Compl. ¶ 12(h). Likewise, the remaining allegation that Plaintiff was "blackballed" by Defendant from future employment opportunities does not reference a particular statement nor publication of that statement to any third party. *See id.* ¶¶ 12(h), 13(x).

Accordingly, Plaintiff's claims for defamation based on alleged collaboration with members of Plaintiff's church and alleged "blackballing" are dismissed. Plaintiff's claim for defamation regarding the Written Warning for Performance, however, survives.

### E. Striking Surplusage

Lastly, Defendant moves the Court to strike the nearly 160 pages of additional documents attached to Plaintiff's Amended Complaint under Rule 12(f). Under Rule 12(f) "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Defendant argues that these exhibits are superfluous

and immaterial and have the sole effect of clouding any potentially relevant issues. Defendant also points out that the documents attached by Plaintiff include confidential settlement discussions and client information. Defendant contends that only the charges and Notice of Right to Sue are properly attached. Plaintiff does not respond to Defendant's motion.

While motions to strike are generally disfavored, in large part because of delay, where granting such motions would "remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). "[W]hen the pleading is redundant or the statements are immaterial, the court has the power to strike the offending parts." *Harman v. Gist*, No. 02 C 6112, 2003 WL 22053591, at *3 (N.D. Ill. Sept. 2, 2003). The Court has reviewed the documents attached to Plaintiff's Amended Complaint. Despite Defendant's argument, many of the attached documents are material. They involve workplace communications and events leading to Plaintiff's filing of charges and eventual termination. While Defendant complains of the haphazard and voluminous nature of the additional documents, and "while clarity and brevity in a complaint is preferable, there is nothing that necessarily requires a complaint to be well organized or well written." *Mullen v. Metra Corp.*, No. 05 C 1717, 2005 WL 1950392, at *5 (N.D. Ill. Aug. 11, 2005). At a minimum, "it is feasible to clearly identify certain causes of action from [Plaintff's] complaint." *Id.* at *4. Indeed, the additional materials have not precluded Defendant from ascertaining Plaintiff's causes of action and theories behind them with sufficient clarity to move for dismissal. And while the Court is sensitive to the concerns Defendant raises about confidential client information and settlement discussions, Defendant does not specifically identify which additional materials are confidential. Consequently, Defendant's Rule 12(f) motion is denied without prejudice.

## IV. Conclusions

For the reasons provided herein, Defendant's motion to dismiss [30] is granted in part and denied in part and Defendant's motion to strike surplusage is denied without prejudice. The Court grants the motion and dismisses with prejudice Plaintiff's claims for age, race, and sex discrimination. The Court also dismisses without prejudice Plaintiff's claims for defamation based on the Church allegations and Defendant's "blackballing." The Court denies the motion insofar as Plaintiff's claims for religious discrimination, retaliation, and defamation based on the Written Warning for Performance survive.

**SO ORDERED**               **ENTER:  12/18/14**

*[signature]*

**JOHN Z. LEE**
**United States District Judge**